**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**JALINE FENWICK,**
individually and on behalf of all
others similarly situated,

Plaintiff,

v.

**ORTHOPEDIC SPECIALTY INSTITUTE, PLLC,**

Defendant.
________________________________/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Jaline Fenwick brings this class action against Defendant Orthopedic Specialty Institute, PLLC (collectively referred to as "Defendant") and alleges as follows upon personal knowledge as to herself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendants' knowing and willful violations of the TCPA.

2. Defendant offers rehabilitation services including Platelet-Rich-Plasma and Adult Mesenchymal Stem cell therapies.[1]

3. Defendant engages in unsolicited telemarketing directed towards prospective customers with no regard for consumers' privacy rights.

4. Defendant's telemarketing consists of sending text messages to consumers soliciting

[1] http://www.osiftl.com/regenerative-biologics/

them to purchase goods and/or services.

5. Defendant caused thousands of unsolicited text messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

6. Through this action, Plaintiff seeks injunctive relief to halt Defendants illegal conduct. Plaintiff also seeks statutory damages on behalf of herself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

**JURISDICTION AND VENUE**

7. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendants. Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

8. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendants are deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets their services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendant has sent the same text message complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts have occurred within this district, subjecting Defendant to jurisdiction here.

**PARTIES**

9. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Broward County, Florida.

10. Defendant is a Florida corporation with its principal address at 5400 N. Federal Highway, Suite 102, Fort Lauderdale, FL 33308. Defendant directs, markets, and provides business activities throughout the State of Florida.

**THE TCPA**

13. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

14. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

15. The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

16. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

17. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls

whether they pay in advance or after the minutes are used.

18. A defendant must demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

19. Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

**FACTS**

20. On or about August 20, 2019, Defendant caused the following automated text messages to be transmitted to Plaintiff's cellular telephone number ending in 1356 ("1356 Number"):



20. Defendant's text messages constitute telemarketing/advertising because they promote Defendants business, goods and services.

21. Specifically, the text messages promote Defendant's stem cell treatment services. The text messages invite Plaintiff and other prospective patients/customers to attend a lecture on available stem cell treatments. The purpose of the lecture is so that Defendant can sell its treatments and therapies to participants who attend the lecture.

22. Upon information and belief, Defendant obtains a financial benefit from selling its goods and services including stem cell therapies.

23. Plaintiff received the subject text message within this judicial district and, therefore, Defendants violation of the TCPA occurred within this district.

24. Upon information and belief, Defendant caused similar text messages to be sent to individuals residing within this judicial district.

25. At no point in time did Plaintiff provide Defendant with her express consent to be contacted by text messages using an ATDS.

26. Plaintiff is the sole user of the 1356 Number.

27. The number used by Defendant (29185) is known as a "short code," a standard 5-digit code that enables Defendant to send SMS text messages *en masse*.

28. The impersonal and generic nature of Defendant's text message, demonstrates that Defendant utilized an ATDS in transmitting the message.

29. Additionally, on August 20, 2019, Plaintiff replied back "stop" to Defendants text message and immediately received the following auto-reply from Defendant:

Stop

Greenway Patient Messaging Alert: You have opted out of messages from this service. For info: https://help.myhealthrecord.com/AboutPatientMessaging.htm

This auto-reply was transmitted automatically without human intervention in response to Plaintiff's "stop" request. Defendant's use of auto-reply functionality further demonstrates that Defendant utilized an ATDS to text message Plaintiff.

30. To send the text message, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

31. The Platform has the capacity to store telephone numbers.

32. The Platform has the capacity to generate sequential numbers.

33. The Platform has the capacity to dial numbers in sequential order.

34. The Platform has the capacity to dial numbers from a list of numbers.

35. The Platform has the capacity to dial numbers without human intervention.

36. The Platform has the capacity to schedule the time and date for future transmission of text messages.

37. To transmit the messages at issue, the Platform automatically executed the following steps:

i. The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;

ii. The Platform then generated each number in the sequential order listed and combined each number with the content of Defendants' message to create "packets" consisting of one telephone number and the message content;

iii. Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

iv. Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendants. Each mobile carrier then sent the message to its customer's mobile telephone.

38. The above execution of Defendants' instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

39. The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:




40. Defendants' unsolicited text messages caused Plaintiff actual harm. Specifically, Plaintiff received the text messages while she was at work. Defendants' text message caused her

cellular telephone to vibrate which alerted her to Defendants call. In doing so, Plaintiff had to stop what she was working on to review her cellular telephone and confirm who was text messaging her and why. Plaintiff estimates that she wasted at least fifteen seconds reviewing Defendant's unwanted messages. The text messages confused Plaintiff because she was not sure who was contacting her and why.

41. As Plaintiff was confused and substantially aggravated by the messages, Plaintiff subsequently attempted to research the name of the sender to verify who the sender actually was. Plaintiff estimates she spent approximately seven minutes investigating the sender of the message.

42. Plaintiff estimates that she also spent at least fifteen minutes reviewing any documents in her possession to see if she had any documents from the Defendant to determine if she had given Defendant permission to send her marketing messages. Plaintiff could not locate any documents.

43. Plaintiff also spent time responding "STOP" to the message so that she would no longer receive messages from Defendant.

44. After she replied "STOP," Plaintiff received another message confirming that she would no longer be contacted. She spent additional time reviewing this reply.

45. In all, Defendants' violations of the TCPA caused Plaintiff to spend over twenty-two minutes of her time in addressing and attempting to stop Defendants' solicitations. This time was spent while Plaintiff was at her home or at her work and could have been pursuing other personal activities.

46. Furthermore, Defendants' text message took up memory space on Plaintiff's cellular telephone, with each message taking up approximately 190 bytes. The cumulative effect of unsolicited text messages like Defendants' poses a real risk of ultimately rendering the phone

unusable for text messaging purposes as a result of the phone's memory being taken up.

**CLASS ALLEGATIONS**

**PROPOSED CLASS**

47. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

48. Plaintiff brings this case on behalf of the below defined Class:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendants or anyone on Defendants' behalf, to said person's cellular telephone number.**

49. Defendants and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

50. Upon information and belief, Defendants have placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

51. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

**COMMON QUESTIONS OF LAW AND FACT**

52. There are numerous questions of law and fact common to the Class which predominate

over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Classare:

a. Whether Defendants made non-emergency calls to Plaintiff and Class members' cellular telephones using an ATDS;

b. Whether Defendants can meet their burden of showing that they obtained prior express written consent to make such calls;

c. Whether Defendants' conduct was knowing and willful;

d. Whether Defendants are liable for damages, and the amount of such damages; and

e. Whether Defendants should be enjoined from such conduct in the future.

53. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

54. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

55. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**SUPERIORITY**

56. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is

economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

57. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. For example, one court might enjoin Defendants from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

58. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

59. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

60. The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

61. Defendants – or third parties directed by Defendants – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such

numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

62. These calls were made without regard to whether Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

63. Defendants violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

64. As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

**WHEREFORE**, Plaintiff Jaline Fenwick, on behalf of herself and the other members of the Class, prays for the following relief:

a. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b. A declaration that Defendants' violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c. An injunction prohibiting Defendants from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d. An award of actual, statutory damages, and/or trebled statutory damages; and

e. Such further and other relief the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff and Class Members hereby demand a trial by jury.

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendants take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the communication or transmittal of the text messages as alleged herein.

Date: September 16, 2019

Respectfully submitted,

**EISENBAND LAW, P.A.**
*/s/ Michael Eisenband*
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Michael Eisenband
Florida Bar No. 94235
Email:
MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

**HIRALDO P.A.**
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

*Counsel for Plaintiff and the Class*