UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  0:19-CV-62290-RUIZ/STRAUSS

JALINE FENWICK,

      Plaintiff,

vs.

ORTHOPEDIC SPECIALTY INSTITUTE, PLLC,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** has come before the Court upon Defendant Orthopedic Specialty Institute, PLLC's ("OSI's") Motion to Dismiss [DE 28] Plaintiff's First Amended Class Action Complaint ("Amended Complaint") brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA") [DE 27].  The District Court entered an Order of Referral [DE 44] referring OSI's Motion to Dismiss to the undersigned for appropriate disposition or recommendation pursuant to 28 U.S.C. § 636(b) and the Magistrate Judge Rules of the United States District Court for the Southern District of Florida.  For the reasons set forth below, the undersigned RECOMMENDS that the Motion to Dismiss [DE 28] be **GRANTED**.

    I.        BACKGROUND

        A.      Procedural History

Plaintiff Jaline Fenwick ("Fenwick") filed an Amended Complaint [DE 27] on November 21, 2019, alleging one count against OSI for violations of the TCPA and seeking declaratory relief, an injunction, and damages.  OSI filed its Motion to Dismiss [DE 28] on December 5, 2019, arguing that Fenwick lacks standing to bring her claim under the TCPA.  Fenwick has responded

to the Motion to Dismiss [DE 31], and OSI has replied [DE 36].  The Motion to Dismiss is, therefore, ripe for review.

### B.    Factual Allegations

OSI provides rehabilitation services, including Platelet-Rich-Plasma and Adult Mesenchymal Stem cell therapies [DE 27, ¶ 2].[1]  On or about August 20, 2019, Fenwick received two back-to-back, identical text messages—each eight (8) lines and 33 words long—that advertised a free lecture promoting OSI's stem cell treatment services:



*Id.* ¶¶ 20-24.  The messages were sent at the same time as evidenced by Fenwick's call records, which timestamped both incoming messages at 1:12 PM:

---

[1]    OSI's   services   are   offered   as   sports   medicine   treatments.    *See* https://www.facebook.com/pg/osiftl/about/?ref=page_internal (last visited Jan. 15, 2020).

*Id.* ¶ 21.  Fenwick responded to both text messages three minutes later by texting back "stop" and then immediately received an auto-reply confirming her opt-out from receiving further messages [DE 27 ¶¶ 21, 31; DE 31 at 3].

> C.   The Amended Complaint

Fenwick brings this putative class action claiming that OSI used an automatic telephone dialing system ("ATDS") to send unsolicited telemarketing text messages to unsuspecting consumers, including herself [DE 27, ¶¶ 1-5, 29-41].  Fenwick supports her claim that OSI utilized an ATDS to send the text messages by alleging, *inter alia*, that the number that OSI used to send the text messages is known to enable the sending of text messages en masse, and that the auto-reply functionality is indicative of the use of an ATDS.  *Id.* ¶¶ 29-31.  Fenwick asserts that OSI's unsolicited text messages caused actual harm, including invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion by wasting twenty-two (22) minutes of her time,[2] using memory space on her cellular telephone, and depleting her cellular telephone battery.  *Id.* ¶¶ 5, 42-49.  Fenwick seeks the statutory minimum of $500.00 in damages for each violation, as well as an injunction against future calls.  *See id.* ¶ 67.  Additionally, Fenwick seeks a finding that Defendant's actions were willful and knowing, thus justifying treble statutory damages.  *See id.*

> D.   The TCPA

An entity violates the TCPA by using an ATDS to make a call — other than a call made for emergency purposes or made with prior express consent —

---

[2] The Amended Complaint alleges that Fenwick "wasted at least fifteen seconds reviewing" the text messages, "approximately seven minutes investigating the sender of the messages," and an estimated "fifteen minutes reviewing any documents in her possession to see if she had any documents from the Defendant to determine if she had given Defendant permission to send her marketing messages" [DE 27, ¶¶ 42-44].

to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States[.]

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA creates a private right of action and is essentially a strict liability statute, except when awarding treble damages, in which case intent is required. *See Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011) (citations omitted). Treble damages may be awarded if the Court determines "the defendant willfully or knowingly violated" the TCPA. *Id.* (quotation marks and citation omitted).

## II.     MOTION TO DISMISS

OSI moves to dismiss the Amended Complaint arguing (1) that Fenwick lacks standing to bring her claim under the TCPA because she has not established a concrete, cognizable Article III injury; and (2) Fenwick lacks standing to seek an injunction because she has not demonstrated continuing harm or a substantial likelihood of future injury from OSI's texts [DE 28 at 13-15, 24-25].

### A.     Legal Standards

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1)." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (internal quotation marks and citation omitted). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be based upon either a facial or factual challenge to the complaint. *See McElmurray v. Consol. Gov't of Augusta–Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citation omitted). In addressing a facial attack, the court accepts the complaint's allegations as true and merely looks to see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. *See id.* (citation omitted). A factual attack, on the other hand, challenges the

existence of subject matter jurisdiction in fact, and the court may consider matters outside the pleadings such as testimony and affidavits. *See id.* (citation omitted).

      B.    Analysis

Here, OSI facially attacks Fenwick's standing to sue under the TCPA [DE 28 at 2-3, 9, 19]. To establish Article III standing, a plaintiff must demonstrate the following: (1) injury-in-fact, (2) causation, and (3) redressability. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), as revised (May 24, 2016). OSI challenges the first element. Specifically, OSI argues that Fenwick's Amended Complaint alleging two simultaneous, unsolicited text messages does not give rise to an injury-in-fact under *Salcedo v. Hanna*, 936 F.3d 1162, 1173 (11th Cir. 2019) [DE 28 at 3, 9]. OSI also argues that Fenwick lacks standing to seek injunctive relief because she does not allege facts to establish continuing harm or substantial risk of future harm. *Id.* at 19.

      i.    Whether Allegations Establish Injury-in-fact

In *Salcedo*, the Eleventh Circuit considered history – the standing-conferring injuries that are "grounded in historical practice" – and the judgment of Congress in crafting the TCPA to determine whether the receipt of an isolated text message constituted an injury-in-fact, consistent with Supreme Court precedent. *Salcedo*, 936 F.3d at 1168, 1170 (rejecting the reasoning of *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017), which held that the receipt of two unsolicited text messages constituted an injury-in-fact). With respect to the judgment of Congress, the Court found that "Congress was concerned about 'intrusive invasion[s] of privacy' into the home when it enacted the TCPA" and "[Congress's] privacy and nuisance concerns about residential telemarketing are less clearly applicable to text messaging." *Id.* at 1169-70 (citing Pub. L. No. 102-243, § 2, ¶ 5). With respect to history, the Court found that "[s]imply sending one text message to a private cell phone is not closely related to the severe kinds of actively

intermeddling intrusions that the traditional tort [of intrusion upon seclusion] contemplates." *Id.* at 1171. *Salcedo* also examined the real property torts of trespass and nuisance and stated that "in Florida, '[m]ere disturbance and annoyance as such do not in themselves necessarily give rise to an invasion of a legal right.'" *Id.* (quotation and citation omitted). Additionally, *Salcedo* considered the personal property torts of conversion and trespass to chattel and held that allegations of isolated, unsolicited text messages are "precisely the kind of fleeting infraction upon personal property that tort law has resisted addressing." *Id.* at 1171–72. In sum, the Eleventh Circuit "[focused] on the qualitative nature of the injury," evaluated the "allegations [of a single, unsolicited text message] in light of the statute, [its] precedent, history, and the judgment of Congress," and determined that the harm was not the type that constituted an injury-in-fact. *Id.* at 1172–73.

Here, Fenwick's allegations of invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion closely align with the kinds of harm that the Court in *Salcedo* evaluated and ultimately found insufficient. *Id.* at 1168–73. Fenwick, however, attempts to distinguish *Salcedo* by arguing: (1) that she received two initial text messages, followed by a third (confirming her opt out) rather than a single text in multiple parts like the plaintiff in *Salcedo*, and (2) unlike Salcedo's general allegations of potential harms, Fenwick's Amended Complaint describes a specific amount of wasted time reading or addressing the text message[3] [DE 31 at 2-3,

---

[3] Fenwick asserts in her Response that, unlike the *Salcedo* plaintiff, she supports her claim by alleging: (1) a specific amount of time wasted, and (2) diminution in the storage space and battery life of her cellular phone [DE 31 at 5]. OSI attached the *Salcedo* complaint to its Motion to Dismiss, and the undersigned notes that the plaintiff there invited the Court to consider as harms, *inter alia*, "slow cell phone performance [resulting from] taking up space on [a] phone's memory" and the "waste [of] time reading and responding to unsolicited text marketing messages," including being "unavailable for otherwise legitimate pursuits" using the cellular phone [DE 28-1 at 4, 9].

4-5]. Fenwick also seeks to discount the *Salcedo* holding because Congress has recently passed legislation[4] amending the TCPA so that it "is no longer silent on the subject of unsolicited text messages" as the *Salcedo* Court stated [DE 46 at 2]. OSI, on the other hand, argues: (1) that the text messages Fenwick received are substantively equivalent to the single text message that was sent to the *Salcedo* plaintiff in simultaneous, but multiple, parts, and (2) that the *Salcedo* holding was not confined to the plaintiff's receipt of a single text message [DE 28 at 9-10, 21-24; DE 36 at 2-4]. The undersigned finds OSI's arguments persuasive for the reasons set forth below (1) even assuming that Fenwick alleges harm with greater specificity than did the plaintiff in *Salcedo* [DE 31 at 5] and (2) even in light of Congress's passing of the TRACED Act on December 30, 2019 [DE 46 at 2].

Fenwick's attempt to meaningfully distinguish her case from *Salcedo* based on the number text messages fails. Fenwick supports her first argument, that she received multiple test messages, by referencing her call records, which establish that she received two initial incoming text messages, followed by a third [DE 31 at 1]. While Fenwick's call records timestamped the initial text messages at 1:12 p.m., Fenwick's cell phone indicates she received both messages at 4:12 p.m.:

---

[4] Fenwick filed a Notice of Supplemental Authority [DE 46] quoting the following section of the *Pallone-Thune TRACED Act*, S. 151, 116th Cong., §10(a) (2019) ("TRACED Act"): "Section 227 of the Communications Act of 1934 (47 U.S.C. § 227) [the TCPA] [was] amended by adding at the end the following: '(i) INFORMATION SHARING.—(1) IN GENERAL.—Not later than 18 months after the date of the enactment of this subsection, the Commission shall prescribe regulations to establish a process that streamlines the ways in which a private entity may voluntarily share with the Commission information relating to—(A) a call made **or a text message** sent in violation of subsection (b) [prohibiting certain types of unsolicited calls] . . . '" (emphasis added). The acronym TRACED stands for Telephone Robocall Abuse Criminal Enforcement and Deterrence [DE 46-1 at 1].



*Id.* at 2.  The third item listed on Fenwick's call records, timestamped at 1:15 p.m., is her outgoing

text of "[s]top" to opt out of receiving further text messages.  *Id.* at 3.  Fenwick then received

another incoming text message, also timestamped at 1:15 p.m., which confirmed her opt-out

request.  *Id.*  Thus, Fenwick argues that she received three text messages rather than one, and

*Salcedo* has no application to her case.  *Id.* at 5.

As OSI argues, however, "whether the [initial two texts are] one or two communications

is a distinction without a difference" because, in *Salcedo*, the Eleventh Circuit focused on the

"brief, inconsequential annoyance" of the unsolicited text rather than the fact that it was a single

text message [DE 36 at 2].  *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019)

(affirming that unsolicited text messages are fundamentally different from faxes and residential

phone calls, which occupy a device for a period of time and intrude upon the privacy of a home).

The undersigned agrees.  Here, Fenwick received two short, identical text messages at the same

time [DE 31 at 1-2].  Three minutes later, Fenwick responded "stop" and instantly received a

confirmation of her opt-out.  *Id.* at 1-3.  Fenwick does not allege that she received the initial two

text messages at two different times nor does she allege that she addressed the text messages separately.   Also, a review of the telemarketing text message in *Salcedo* indicates that it is qualitatively similar to the telemarketing text messages Fenwick received because the single text message in *Salcedo* was sent in three parts and required reading more unique words than the two identical and simultaneous text messages Fenwick received:



[DE 28 at 8].

　　Moreover, the undersigned finds that Fenwick's allegation that the confirmation of her opt-out constituted a third text message is unavailing.  A confirmatory text message, which is the only

additional message sent, does not violate the TCPA. *Zemel v. CSC Holdings LLC*, No. CV 18-2340-BRM-DEA, 2018 WL 6242484, at *5 (D.N.J. Nov. 29, 2018).

Furthermore, the qualitative harm Fenwick allegedly suffered here is indistinguishable from what the Eleventh Circuit found insufficient in *Salcedo*. In *Salcedo*, the Eleventh Circuit instructed that the analysis of an injury in the context of a single text message proceeds as follows:

> the focus is on the qualitative nature of the injury, regardless of how small the injury may be. Our assessment . . . [is] qualitative, not quantitative. We have assessed how concrete and real the alleged harm is, . . . and we have concluded that it is not the kind of harm that constitutes an injury in fact. Some harms that are intangible and ephemeral may do so, but Salcedo's allegations of the harm he suffered from receiving a single text message do not.

*Salcedo*, 936 F.3d at 1172–73. While Salcedo did not claim a specific amount of wasted time, the Court qualitatively evaluated the "waste [of] time reading and responding to unsolicited text marketing messages" including being "unavailable for otherwise legitimate pursuits" using the cellular phone [DE 28-1 at 4, 9]. *See also Salcedo*, 936 F.3d at 1172-73 (explaining in its qualitative assessment of the alleged injury that, under precedent, wasted time can constitute a concrete harm but finding the receipt of a single text message to be insufficient to establish such harm). Here, Fenwick fails to establish how receiving two identical, and simultaneously received, brief text messages is qualitatively different than the harm from the single, multi-part text message the Eleventh Circuit addressed in *Salcedo*.

Nor does Fenwick's more detailed allegation of the time she wasted meaningfully affect the qualitative assessment of the harm. Fenwick alleges that "she wasted at least fifteen seconds reviewing Defendant's unwanted messages" [DE 27 ¶ 42]. She does not allege when she observed the text messages. Her call records reflect that she opted-out from receiving further messages within 3 minutes time. *Id.* at ¶ 21. Fenwick also alleges confusion and time spent investigating the sender and whether she had given permission. *Id.* at ¶¶ 43-47. But these same allegations

apply equally to a single text message as they do to two simultaneously received text messages. Thus, the undersigned concludes that the two initial text messages align with the "brief, inconsequential annoyance" that *Salcedo* determined did not confer standing.

Lastly, the undersigned finds unpersuasive Fenwick's reliance on the recent passing of the TRACED Act to attack the reasoning and holding in the *Salcedo* decision [DE 46 at 2]. As part of its analysis, the *Salcedo* Court first took note of the fact that Congress had said nothing in the TCPA's provisions and findings about harms from telemarketing through text messages generally. *Salcedo*, 936 F.3d at 1168-69. Then, the Court went on to find that a single telemarketing text message is qualitatively different than the kinds of harm that Congress intended to address through the TCPA—"an intrusive invasion of privacy" and "nuisance calls to [the] home[ ] from telemarketers." *Id.* at 1169. Fenwick's Notice of Supplemental Authority [DE 46] fails to explain how Congress's passing of the TRACED Act counters *Salcedo's* determination that "[t]he judgment of Congress . . . provides little support for finding . . . a concrete injury in fact" from "the receipt of a single text message." *Id.* at 1169-70. Nothing in the cited language, which concerns the streamlining of information sharing with the Federal Communications Commission, clearly evinces a Congressional intent at odds with the Eleventh Circuit's analysis in *Salcedo*. Nor does the undersigned otherwise detect that the TRACED Act negates *Salcedo's* holding. Thus, the undersigned concludes that *Salcedo* stands as good law, which applies to this case.

For the foregoing reasons, the undersigned finds that, under *Salcedo*, Fenwick fails to establish an injury-in-fact and, therefore, lacks standing. Accordingly, the undersigned RECOMMENDS that OSI's Motion to Dismiss be **GRANTED** without prejudice. *Salcedo*, 936 F.3d at 1173 n. 12 ("a jurisdictional dismissal is entered without prejudice") (citation omitted).

ii.        <u>Whether Allegations Establish Standing to Seek Injunction</u>

As the undersigned concludes that Fenwick lacks standing to maintain this action, this Court does not reach the question of whether her allegations establish standing to seek an injunction.

III.        <u>CONCLUSION</u>

For the foregoing reasons, the undersigned respectfully RECOMMENDS that OSI's Motion to Dismiss [DE 28] Plaintiff's First Amended Class Action Complaint [DE 27] be **GRANTED** without prejudice.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**DONE AND SUBMITTED** in Chambers, Fort Lauderdale, Florida, this 4th day of February 2020.

Jared M. Strauss
United States Magistrate Judge

Copies furnished via CM/ECF to:

Hon. Rodolfo A. Ruiz, II
Counsel of record